```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


HOSEA HAYNES,                     )
                                  )
           Petitioner,            )
                                  )
     v.                           )  No. 13 C 4261
                                  )
GREG GOSSETT, Acting              )
Warden, Illinois Riverside        )
Correctional Center               )
                                  )
           Respondent.            )
```

## MEMORANDUM OPINION AND ORDER

Hosea Haynes ("Haynes") has petitioned this Court for a writ of habeas corpus to overturn his state conviction for first degree murder. I deny Haynes's petition for the reasons stated below and also decline to issue a certificate of appealability.

I.

On February 9, 1990, a Northlake, Illinois police officer approached Haynes at a currency exchange to question him about the murder of Michael Kelliher ("Kelliher") one month earlier.[1] When the officer pulled Haynes out of line, Haynes said, "I didn't mean to hurt that guy, but he was going to hurt me." The police arrested Haynes and provided him with *Miranda* warnings on

---

[1] On habeas review, the Illinois Appellate Court's statement of facts, *see* Dkt. No. 12 at Ex. A, is presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1

the way to the station.  *See Miranda v. Arizona*, 384 U.S. 436
(1966).  All questioning ended when Haynes asserted the right to
remain silent and asked to speak with an attorney.  The Northlake
police released Haynes without bringing charges.

The Kelliher murder remained a cold case until 1998 when
Illinois police performed DNA analysis on blood found inside a
pocketknife recovered from the Haynes family apartment shortly
after the murder.  After establishing a DNA match between
Kelliher's blood and the blood inside the pocketknife, the
Northlake police obtained an arrest warrant for Haynes.

Haynes initiated communication with the Northlake police
officers who arrested him in Minnesota on November 5, 1998.
After the police interrupted Haynes to administer fresh *Miranda*
warnings, he waived his rights and continued talking.  Haynes
stated that he met Kelliher at a bar on the night of the murder
and later went with him to a convenience store.  However, Haynes
did not remember getting into a fight with Kelliher or hurting
him.

In August 2000, Haynes filed a pre-trial motion to suppress
his 1998 statements on the ground that Northlake police knew or
should have known that Haynes invoked the right to remain silent
and requested an attorney in 1990 and could not be re-
interrogated about the same crime.  The trial court denied
Haynes's motion.  A jury subsequently found Haynes guilty of

first degree murder. Haynes is currently serving a sixty year prison sentence at the Illinois River Correctional Center in Canton, Illinois.

The only issue raised in Haynes's direct appeal was whether the trial court should have suppressed his 1998 statements to Northlake police. The Illinois Appellate Court rejected this argument. *See* Rule 23 Order ("Or."), *People v. Haynes*, No. 1-00-4151 (Ill. App. Ct. Sept. 27, 2002).

In his *pro se* petition for leave to appeal ("PLA"), Haynes raised four new arguments: (1) the state knowingly used perjured testimony about how Northlake police obtained the pocketknife containing Kelliher's blood; (2) Haynes's trial attorney provided ineffective assistance by failing to call witnesses who would have refuted the state's theory that investigators recovered the pocketknife while searching the Haynes family apartment; (3) Haynes's appellate attorney provided ineffective assistance by refusing to file a supplemental brief regarding how Northlake police actually came into possession of the pocketknife; and (4) the trial court had an affirmative duty to advise Haynes of his right to be sentenced under the procedures in effect at the time of the underlying crime. The Illinois Supreme Court denied Haynes's *pro se* petition for discretionary review on April 2, 2003.

The Circuit Court of Cook County appointed counsel for Haynes after he filed a *pro se* petition for post-conviction relief based on the state's alleged use of perjured testimony. This collateral review proceeding culminated in a counseled PLA arguing that Haynes's post-conviction counsel provided ineffective assistance. The Illinois Supreme Court denied Haynes's second PLA on September 26, 2012. Haynes now turns to this Court for relief.

In his *pro se* habeas petition, Haynes seeks relief on four grounds: (1) his 1998 statements to Northlake police were obtained and used in violation of his Fifth Amendment right to remain silent; (2) his 1998 statements to Northlake police were obtained and used in violation of his Fifth Amendment right to the assistance of counsel during custodial interrogations; (3) the state violated his due process rights by knowingly using perjured testimony that the Northlake police recovered the pocketknife during a search of the Haynes family apartment when, in fact, Haynes's stepbrother, Sebron Floyd ("Floyd"), turned it in to the police; and (4) Haynes's trial counsel was ineffective for failing to introduce an affidavit from Floyd stating that he made false statements about the pocketknife after prosecutors threatened to bring charges against him for withholding evidence in a murder investigation.

II.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs my review of Haynes's habeas petition. Under AEDPA, when a state court has already adjudicated the petitioner's claim(s) on the merits, a federal court may not grant habeas relief unless the state court's decision was (1) "contrary to" or "an unreasonable application of" Supreme Court precedent, or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. at § 2254(d).

A.

Haynes has exhausted state remedies because he no longer has "the right under the law of [Illinois] to raise, by any available procedure, the question[s] presented." *Id*. at § 2254(c). However, Respondent argues that Haynes has procedurally defaulted his claims relating to the state's alleged use of perjured testimony and ineffective assistance of trial counsel because Haynes failed to present these claims through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In order to avoid procedural default, a habeas petitioner "must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th

Cir. 2007); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) ("[T]he petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.").

Although Haynes's first PLA filed with the Illinois Supreme Court argued that the state knowingly used perjured testimony and that his trial attorney was ineffective, he did not raise these claims before the Illinois Appellate Court. This omission at the intermediate appellate stage results in procedural default. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (a claim raised "for the first and only time" in a petition for discretionary review to the state's highest court has not been fairly presented to the state courts); *Alvarez v. McGinnis*, 4 F.3d 531, 534-5 (7th Cir. 1993) ("A claim is not fairly presented if done for the first time in a procedural context in which the reviewing court exercises only discretionary review.").

"[A] district court may excuse procedural default if the petitioner can demonstrate either (a) cause for the default and prejudice (i.e., the errors worked to the petitioner's actual and substantial disadvantage,); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (i.e., a claim of actual innocence)." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (internal quotations omitted). Haynes has not attempted to excuse his procedural defaults in either his

6

petition or reply brief, so I need not address this issue. *Wilson v. Briley*, 243 F.3d 325, 329 (7th Cir. 2001).

Before turning to the merits, I note that Haynes did not argue in either PLA he filed with the Illinois Supreme Court that his 1998 statements should have been suppressed. Accordingly, his Fifth Amendment claims based on *Miranda* appear to be procedurally defaulted as well, but Respondent has not raised this argument. Because Haynes's Fifth Amendment claims are without merit, I reject them on that basis.

B.

To prevail on the merits, Haynes must show that the Illinois Appellate Court's rejection of his suppression claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

Haynes argues that any statements he made to the Northlake police in 1998 are inadmissible because he invoked the right to remain silent and requested an attorney eight years earlier. Haynes is correct that police must stop questioning a suspect in custody who indicates that he wishes to remain silent or requests an attorney. *Miranda*, 384 U.S. at 473-4. However, *Miranda* does not establish a *per se* rule against any future questioning of the same suspect regarding the same crime. *See Michigan v. Mosley*, 423 U.S. 96, 101 (1975) (noting that *Miranda* "does not state

7

under what circumstances, if any, a resumption of questioning is permissible").

The Supreme Court has established separate tests for determining when police may resume questioning a suspect who previously invoked the right to remain silent and/or the right to counsel during custodial interrogations. Accordingly, I analyze these as separate issues.

1.

In *Mosley*, the Supreme Court explained that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his right to cut off questioning was scrupulously honored." *Id*. at 104 (internal quotations omitted). Whether police "scrupulously honored" a suspect's right to remain silent depends on "the amount of time that lapsed between interrogations; the scope of the second interrogation; whether new *Miranda* warnings were given; and the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence." *U.S. v. Schwensow*, 151 F.3d 650, 658 (7th Cir. 1998) (citing *Mosley*, 423 U.S. at 104-5). "[T]he constitutionality of a subsequent police interview depends not on its subject matter but rather on whether the police, in conducting the interview, sought to undermine the suspect's resolve to remain silent." *Id*. at 659.

Here, the Illinois Appellate Court concluded that Northlake police scrupulously honored Haynes's right to remain silent because the police (1) immediately stopped questioning Haynes in 1990 when he invoked this right and released him shortly thereafter; (2) did not attempt to resume questioning for more than eight years; and (3) provided a fresh set of *Miranda* warnings before questioning Haynes in 1998. Or. at 10-11. This conclusion is a reasonable application of *Mosley*, where the Supreme Court held that a suspect's incriminating statement was admissible even though only two hours passed before the police resumed questioning. 423 U.S. at 106 (characterizing two hours as "a significant period of time").

Haynes's reliance on *People v. Nielson*, 718 N.E.2d 131 (Ill. 1999), and *People v. Mendez*, 749 N.E.2d 391 (Ill. App. Ct. 2001), is unavailing because AEDPA does not permit a habeas court to grant relief based on state precedents. Moreover, in both cases, the court held that the suspect's right to remain silent was "scrupulously honored" given that more than two hours elapsed between the first and second custodial interrogations. *See Nielson*, 718 N.E.2d at 143; *Mendez*, 749 N.E.2d at 400.

In sum, Haynes has not demonstrated that the Illinois Appellate Court's application of *Mosley* to the facts of his case--where more than eight and a half year passed before police re-interrogated him--was unreasonable.

2.

The Supreme Court has established stronger safeguards against re-interrogation of suspects who invoke the Fifth Amendment right to counsel. In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id*. at 484.

> If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards.

*McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991). The *Edwards* presumption of involuntariness "is designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

After citing *Edwards* as the governing precedent, the Illinois Appellate Court noted that Haynes initiated communication with the Northlake police rather than *vice versa*. "The police did not initiate any discussion with [Haynes] nor did they attempt any coercive measures to encourage [him] to make a statement." Op. at 9. When the police detective interrupted

Haynes to remind him of his *Miranda* rights, Haynes expressly waived these rights and went on to describe his recollection of the night Kelliher was murdered. Based on these facts, the Illinois Appellate Court reasonably concluded that the *Edwards* presumption of involuntariness no longer applied because "the accused himself initiate[d] further communication, exchanges, or conversations with police." *Edwards*, 451 U.S. at 485.

The *Edwards* presumption is also inapplicable to Haynes's situation because eight and a half years passed between his first and second interrogations. *See Maryland v. Shatzer*, 559 U.S. 98, 106-7 (2010) (noting that Supreme Court has applied *Edwards* presumption only where suspect was held in "uninterrupted pretrial custody" between first and second interrogations). The long break in custody between Haynes's first and second interrogations also distinguishes his case from *People v. Lira*, 742 N.E.2d 885 (Ill. App. Ct. 2001), where the court suppressed incriminating statements a suspect made during his second interrogation "on the same afternoon within a matter of a few hours" while being held in "continuous police custody." *Id*. at 891. Haynes's reliance on *Lira* is also misplaced because the case is not clearly established Supreme Court precedent and therefore cannot serve as the basis for habeas relief under AEDPA's stringent standards.

11

III.

Haynes's habeas petition is DENIED for the reasons stated above. I also decline to issue a certificate of appealability because Haynes has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), or established that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling[s]," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge


Dated: December 16, 2013